UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHNNIE MAE RIGGSBEE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**DIVERSITY SERVICES, INC.,**<br><br>**Defendant.** | Civil Action No. 07-2113 (JDB) |

## MEMORANDUM OPINION

Plaintiff Johnnie Mae Riggsbee brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., against her former employer Diversity Services, Inc. ("Diversity"), alleging employment discrimination on the basis of her race and sex. Now before the Court is Diversity's motion for summary judgment on all claims. For the reasons discussed below, the Court will grant the motion and enter summary judgment in favor of Diversity.

## BACKGROUND

Diversity is a temporary staffing agency in Washington, D.C. that specializes in placing individuals with disabilities into temporary employment positions with D.C. clients. Decl. of Ellen de Bremond ("de Bremond Decl.") ¶ 2; Diversity Stmt. of Mat. Facts ("SOF") ¶ 1. Diversity earns its fees through employee placement and handles the payroll for the employees that it places in temporary positions. de Bremond Decl. ¶ 3; Diversity SOF ¶ 1. Diversity asserts that as a temporary staffing agency it has little control over an employee's placement or tenure with a client. de Bremond Decl. ¶ 3.

Diversity hired Riggsbee, a black female, in December 2004, and immediately placed her in a position as a temporary identification services clerk in the House of Representatives (the "House") where she earned $13.98 per hour. Id. ¶ 5; Diversity Mem. at 8. Diversity asserts that on April 25, 2005, it successfully negotiated with the House to transfer Riggsbee to a new temporary clerk position where she earned $16 per hour. de Bremond Decl. ¶ 6; Diversity Mem. at 8. However, by the end of June 2005, the House informed Diversity that Riggsbee's temporary assignment was complete and that her services were no longer needed. de Bremond Decl. ¶ 7; Declaration of David Miller ("Miller Decl.") ¶ 4. After her position with the House ended, Diversity claims that it offered Riggsbee three temporary positions -- proctoring exams in July 2005 at $10 per hour, photographing store fronts in September 2005 at $13 per hour, and distributing flyers in September 2005 at $9 per hour. de Bremond Decl. ¶ 9. Riggsbee did not accept these positions and did not fulfill Diversity's weekly check-in requirement after finishing her assignment with the House. Id. ¶ 10.

Riggsbee presents a different version of the events surrounding her temporary employment at the House. She contends that she worked at the House from December 2004 to April 2005 when she was told to leave that position by a Diversity employee. Affidavit of Johnnie Mae Riggsbee ("Riggsbee Aff.") ¶¶ 1-2. She asserts that she was then hired in May 2005 for a receptionist/data entry position at the House that would last until October 2005. Id. ¶ 4. However, in July 2005, she received a call from a Diversity employee telling her to leave this new position. Id. ¶ 5. The next day, she saw Diversity employee Norman Gugliotta, a white male, sitting at her desk. Id. She claims that Gugliotta said he was placed in her old position because he wanted to work there. Id. Riggsbee adds that David Miller, Director of Human

Resource Administration for the House, told her that no one at the House had made the decision to terminate her House position.  Id. ¶ 7.  She asserts that although she checked in weekly with Diversity after she left the House, she was only offered one position distributing flyers in September 2005.  Id. ¶ 8.  She also claims that the only other position Diversity offered her was a $9 per hour proctoring job in April 2005, before her second position at the House began, which she accepted.  Id. ¶ 3.

On December 20, 2005, Riggsbee filed a charge against Diversity with the Equal Employment Opportunity Commission (EEOC).  Diversity Ex. 3 ("Riggsbee EEO Compl.").  Riggsbee selected race as the only basis for discrimination, and alleged "unlawful racial discrimination against me on the basis of my race and color."  Id.  The EEOC investigated Riggsbee's charge, rejected her claim that violations of Title VII had occurred, and subsequently issued a right to sue letter allowing her to bring her claim in this Court.  Compl. ¶ 14.

Riggsbee filed her judicial complaint on November 21, 2007, alleging employment discrimination based on her race and her sex in violation of Title VII.  Id. ¶ 1, 12, 13.  Count One alleges race discrimination and lists three actions as being discriminatory: (1) deliberately terminating Riggsbee from her employment with the House despite her excellent work performance and replacing her with a white male, (2) failing and refusing to take appropriate action to remedy the effects of her discriminatory treatment, and (3) failing to make a reasonable effort to find comparable alternative employment.  Id. ¶ 12.  Count Two alleges sex discrimination based on these same actions.  Id. ¶ 13.  But only two employment actions are actually described in the complaint, because Diversity's alleged refusal to "remedy the effects of . . . discriminatory treatment" is an inherent part of Riggsbee's discriminatory termination claim,

rather than a freestanding claim. See id. ¶¶ 12-13.  Hence, the Court's analysis will focus on Riggsbee's termination claim and Diversity's alleged failure to find her comparable alternative employment.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.

# DISCUSSION

### I.  Sex Discrimination

Riggsbee's complaint alleges employment discrimination on the basis of both her race and her sex.  Compl. ¶¶ 12-13.  Diversity raises the threshold issue of whether Riggsbee has exhausted her administrative remedies for her sex discrimination claim.  Diversity Mem. at 10.  An individual must file an administrative charge within the time period specified by Title VII (see 42 U.S.C. 2000e-5(e)(1)) or lose the ability to recover for it.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-10 (2002).  In evaluating an EEO complaint, "the administrative charge requirement should not be construed to place a heavy technical burden" on complainants.  Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995).  However, the "court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process."  Id.

The EEO complaint form at issue lists nine bases of discrimination, including race and sex.  See Riggsbee EEO Compl.  The form instructs a complainant to check the boxes next to those bases of discrimination that she is alleging, and then to describe the "particulars" of the alleged discrimination in narrative form.  Id.  Riggsbee's EEO complaint checks only "race" as a basis of discrimination.  Her accompanying narrative, in its entirety, states:

> I am a black female.  I began working for Respondent [Diversity] in 12/04.  I was informed my job was being eliminated because of a budget cut in 7/05 and my employment was terminated; however, after I was terminated, I noticed that Respondent hired a white male for my job, *so the reason given to me for termination was pretext to mask unlawful racial discrimination against me on the basis of my race and color*.

Id. (emphasis added).

Riggsbee argues that by noting that she was a "black female" replaced by a "white male" in the body of her complaint, she adequately articulated a sex discrimination claim. Riggsbee Aff. ¶ 9. However, beyond these two references to "male" and "female," the EEO complaint contains nothing that implies an allegation of sex discrimination. See Riggsbee EEO Compl. Indeed, her one paragraph narrative in the EEO complaint underscores her charge that the discrimination alleged is limited to "race" -- the box she checked -- by stating "the reason given to me for termination was pretext to mask unlawful racial discrimination against me on the basis of my race and color." Id. Riggsbee's own characterization of her EEO complaint, then, plainly shows that she raised only a claim of race discrimination, not sex discrimination. Therefore, the Court will grant Diversity's motion for summary judgment on Count Two.

## II.     Race Discrimination

Riggsbee's race discrimination claims relate to the termination of her position at the House and Diversity's subsequent alleged failure to provide comparable alternative employment. Compl. ¶ 12. Diversity contends that the evidence fails to support a prima facie case of discrimination and, even if it did, no reasonable trier of fact could find that Diversity discriminated against Riggsbee. See Diversity Mem. at 5-10.

### A.     The McDonnell Douglas Framework

The framework for establishing a prima facie case of discrimination was introduced for Title VII claims in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The first step in the analysis requires a plaintiff to carry the burden of establishing a prima facie case by a preponderance of the evidence. Id.; Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). In order to make out a prima facie case of discrimination, a plaintiff must show

that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (citing Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)).  An adverse employment action requires that there be "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citing Brown, 199 F.3d at 457).

    Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. McDonnell Douglas, 411 U.S. at 802.  The employer's burden, however, is merely one of production. Burdine, 450 U.S. at 254-55.  The employer "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Id.

    Where assessment of the employer's legitimate, non-discriminatory reason becomes necessary, a prolonged evaluation of the sufficiency of the plaintiff's prima facie case is unnecessary, for the central inquiry then becomes "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." See Adeyemi v. Dist. of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008); see also Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08, 511 (1993), and U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714-16 (1983)).  "Whether judgment as a matter of law is appropriate in

any particular case will depend on a number of factors . . . includ[ing] the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148-49 (2000); accord Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc); see also Waterhouse v. Dist. of Columbia, 298 F.3d 989, 992-93 (D.C. Cir. 2002).

    In other words, the McDonnell Douglas shifting burdens framework effectively evaporates -- the sole remaining issue is discrimination vel non, and "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason."  Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003); see Reeves, 530 U.S. at 142-43.  Examination of that issue in this setting therefore requires consideration of all the relevant circumstances in evidence, including the strength of the prima facie case, any direct evidence of discrimination, any circumstantial evidence that defendant's proffered explanation is false (which may be enough with the prima facie case to infer unlawful discrimination), and any properly considered evidence supporting the employer's case.  Reeves, 530 U.S. at 147-48; see also Adeyemi, 525 F.3d at 1226; Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C. Cir. 2004); Lathram, 336 F.3d at 1089; Waterhouse, 298 F.3d at 993; Aka, 156 F.3d at 1290.

    **B.  The Temporary Position at the House of Representatives**

    Riggsbee argues that she was terminated by Diversity because of her race, and replaced

by Diversity employee Norman Gugliotta, a white male.[1]  Compl. ¶ 12; Riggsbee Aff. ¶¶ 4-7. Diversity responds that Riggsbee did not suffer an adverse employment action because she was not terminated; her temporary assignment with the House simply concluded.  Diversity Mem. at 6.  Diversity further argues that even if Riggsbee had been terminated, the House, not Diversity, was the decision-maker in any employment action concerning Riggsbee's temporary position.  Id. at 6-7; de Bremond Decl. ¶ 7; Miller Decl. ¶¶ 3-4.  Finally, Diversity contends that Riggsbee cannot establish an inference of discrimination because she was not replaced by Gugliotta, he was not a similarly situated employee, and in any case, the House, not Diversity, permanently hired him.  Diversity Mem. at 8-10; de Bremond Decl. ¶¶ 3, 8; Miller Decl. ¶ 5.

As a threshold matter, Riggsbee's prima facie case for discriminatory termination is quite weak.  First, Riggsbee presents little evidence that would support an inference of discrimination. Her evidence consists of her statement that she was replaced by a similarly situated employee, but as discussed in more detail below, the record contains no admissible evidence supporting that allegation, nor does the record indicate that Diversity made the decision to close out her position

---

[1] Riggsbee, however, does not allege discriminatory action on the part of the House, and did not file a complaint against the House after her dismissal.  Riggsbee Dep. at 53.  Instead, Riggsbee alleges that Diversity was responsible for her termination and replacement at the House.  Riggsbee Aff. ¶ 7.  Although an onsite employer and temporary agency have been held by courts to be liable for discrimination under a "joint employer" standard, this Court has no occasion to address that issue because Riggsbee has not alleged discrimination by the House. See, e.g., Coles v. Harvey, 471 F. Supp. 2d 46, 50 (D.D.C. 2007) (discussing the "joint employer" standards applied in NLRB v. Browning-Ferris Indus. of Penn., Inc., 691 F.2d 1117 (3d Cir. 1982), and Spirides v. Reinhardt, 613 F.2d 826 (D.C. Cir. 1979)); Caldwell v. Servicemaster Corp., 966 F. Supp. 33, 46 (D.D.C. 1997) (finding that to prevail on a theory of joint employer liability, a plaintiff must show that the temporary agency knew or should have known of the discriminatory conduct of the onsite employer and failed to take corrective measures within its control).  But see Medina v. Adecco, 561 F. Supp. 2d 162, 177 (D.P.R. 2008) (finding temporary employment agency was not employee's joint employer, and therefore not liable for alleged violations of Title VII).

at the House. It is also questionable whether the early termination of a temporary position is an adverse employment action, although the Court will assume without deciding that it is. Nevertheless, where, as here, "the employer asserts a legitimate, non-discriminatory reason [for an adverse employment action], the question whether the employee actually made out a prima facie case is 'no longer relevant,'" and the Court will therefore proceed to the remaining steps of the McDonnell Douglas framework. Brady, 520 F.3d at 493 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993)). At this stage, the "district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" Id. at 494.

Here, the legitimate, non-discriminatory reason for Riggsbee's termination offered by Diversity is that the House, the ultimate arbiter of Riggsbee's employment status there, "no longer needed her services." Miller Decl. ¶ 4; de Bremond Decl. ¶ 7. Diversity states that it did not have the authority to terminate Riggsbee or hire Gugliotta for the House position, and that only the House could make those decisions. de Bremond Decl. ¶¶ 5, 8. Diversity further states that Gugliotta was not a similarly situated employee because he performed "a totally different job" in which he "applied his skills as an accountant," in contrast to the administrative position held by Riggsbee. See Miller Decl. ¶ 5; see also de Bremond Decl. ¶ 8. In other words, Riggsbee was not replaced. See Miller Decl. ¶ 5; de Bremond Decl. ¶ 8.

In response, Riggsbee attempts to bolster an inference of discrimination based on statements allegedly made by Gugliotta and Miller. To demonstrate that Gugliotta replaced her,

she alleges in her affidavit that Gugliotta "told me that . . . he was now doing the same job that I used to do" and that "he was there because he wanted to work there." Riggsbee Aff. ¶ 5. To show that Diversity, not the House, made the decision to fire her, she claims that "Miller told me that he did not make the decision to terminate me and that nobody at the House of Representatives made the decision to terminate my employment." Id. ¶ 7. But on summary judgment, statements that are impermissible hearsay or that are not based on personal knowledge are precluded from consideration by the Court. Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (holding that, where plaintiff's statement about another employee's comment was "'sheer hearsay,' it 'counts for nothing' on summary judgment") (quoting Gleklen v. Democratic Cong. Campaign Comm., 199 F.3d 1365, 1369 (D.C. Cir. 2000)); Kilby-Robb v. Spellings, 522 F. Supp. 2d 148, 165 (D.D.C. 2007) (same), aff'd, 309 F. App'x 422 (D.C. Cir. 2009). Under Federal Rule of Civil Procedure 56(e), an "opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Hearsay evidence -- a statement made by an out-of court declarant "offered in evidence to prove the truth of the matter asserted" -- is inadmissible unless it falls within a statutory exception. See Fed. R. Evid. 801-02; Greer, 505 F.3d at 1315.

To support her discriminatory termination claim, Riggsbee offers only inadmissible hearsay evidence to show that Diversity, acting as a decision-maker, ended her employment in a discriminatory manner. First, to establish that she was terminated by Diversity and replaced by a white male, Riggsbee asserts that Gugliotta said he had taken her old position because he wanted to work there. Riggsbee Aff. ¶ 5. She also asserts that Miller told her that the House did not decide to terminate her position. Riggsbee Aff ¶ 7. Both of those statements are inadmissible

hearsay under Federal Rule of Evidence 801(c) because they are Riggsbee's accounts of what the declarants -- Gugliotta and Miller -- said, offered in evidence to prove the truth of the matter asserted.  Indeed, Riggsbee's account of Miller's hearsay statement is contrary to Miller's own declaration.  Compare Riggsbee Aff. ¶ 7 ("I have spoken to David Miller in person and Mr. Miller told me that he did not make the decision to terminate me.") with Miller Decl. ¶¶ 3-4 (Riggsbee had "completed her temporary assignment, so we no longer needed her services."). Such hearsay statements in Riggsbee's affidavit cannot be considered by the Court on a motion for summary judgment.  See Greer, 505 F.3d at 1315.  Finally, Riggsbee does not claim personal knowledge that she was replaced by Gugliotta, nor does she claim personal knowledge of the human resources practices of the House in regards to her position.  Her assertion that a Diversity employee told her to leave her temporary assignment does not establish that Diversity was responsible for her termination.  See Riggsbee Aff. ¶ 5.

Riggsbee offers no other admissible evidence to counter Diversity's non-discriminatory reason for instructing her to leave the House position -- that is, that she was asked to leave because the House no longer needed her temporary services.  Riggsbee's sole evidence in support of an inference of discrimination is her statement that she was replaced by a white male.  Id. However, "'[i]n the absence of evidence that the comparator[] [was] actually similarly situated' to [plaintiff], an inference of falsity or discrimination is not reasonable."  Montgomery v. Chao, 546 F.3d 703, 707 (D.C. Cir. 2008) (quoting Waterhouse v. D.C., 298 F.3d 989, 995 (D.C. Cir. 2002); see also Prater v. FedEx Corporate Services, Inc., Civ.A.No. 07-0022, 2009 WL 1725978, at *11 (D.D.C. June 18, 2009).  Diversity's evidence shows that "at no time during his employment with Diversity did Mr. Gugliotta," as an accountant, "function in the same position

as Ms. Riggsbee." de Bremond Decl. ¶ 8; Miller Decl. ¶ 5. Considering the question of discrimination vel non, the Court concludes that Riggsbee fails to present evidence from which a reasonable trier of fact could find that Diversity discriminated against her when her work at the House concluded. The Court will therefore grant summary judgment in favor of Diversity on this aspect of Riggsbee's race discrimination claim.

### C. Comparable Alternative Employment Opportunities

Riggsbee alleges that Diversity subsequently discriminated against her by failing to provide comparable temporary employment opportunities after her position at the House had ended. Compl. ¶ 12. Diversity counters that it offered Riggsbee three alternative placements that she failed to accept. de Bremond Decl. ¶ 9. Riggsbee responds that Diversity offered her only one position distributing flyers after her work at the House had ended, which she declined because it was not comparable to her prior work. Riggsbee Aff. ¶ 8. However, Riggsbee's version of events, even accepted as true, is not sufficient to support an inference of discrimination either as a separate adverse action or as additional evidence of Diversity's motive for her termination.

Even if, as Riggsbee argues, Diversity only made one employment offer, given the weakness of her prima facie case and the lack of evidence pointing to a discriminatory intent by Diversity, no reasonable trier of fact could find that Diversity's failure to provide Riggsbee with more or better temporary assignments indicates a discriminatory motive. See Reeves, 530 U.S. at 142-43. Evidence used to create an inference of discrimination commonly consists of a showing that similarly situated persons of a different protected class received more favorable treatment, a showing that an employer is lying about the reasons for adverse treatment, or a failure by the

employer to follow established procedures.  Brady, 520 F.3d at 495.  Riggsbee does not assert that other similarly situated Diversity employees were offered better temporary positions based only on their race or that comparable positions were even available.  She does not present evidence to suggest that even if Diversity only offered her a single job distributing flyers, it was not following its established procedures.  Riggsbee only asserts that the position distributing flyers "was not comparable to the position that [she] formerly held at the [House]," yet presents no evidence evaluating its comparability to the House position, or indicating that other "comparable" positions were available at that time.  Riggsbee Aff. ¶ 8.  Furthermore, Diversity has presented undisputed evidence that it has actively negotiated employment offers on behalf of Riggsbee.  de Bremond Decl. ¶ 6.

In short, Riggsbee does not put forth any evidence of discrimination other than that she is a member of a protected class.  Compl. ¶ 12.  Moreover, although the parties disagree on the timing of employment offers, Diversity has undisputedly offered Riggsbee three temporary positions during her time at Diversity: a position proctoring exams, the positions at the House, and a position distributing flyers which she refused.  See de Bremond Decl. ¶¶ 5-6; Riggsbee Aff. ¶¶ 1-4, 8.  Therefore, although the parties dispute the number of jobs Diversity offered Riggsbee after her position with the House, the Court concludes that no reasonable jury could conclude from all the evidence that Diversity discriminated against Riggsbee either in telling her to leave the House position or in subsequently failing to offer her better temporary positions.

## **CONCLUSION**

For the foregoing reasons, the Court will grant Diversity's motion for summary judgment on all claims. A separate order will be issued herewith.

>                      /s/
>             JOHN D. BATES
>       United States District Judge

Dated:  July 28, 2009